**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHNSON & JOHNSON VISION CARE,
INC., a Florida Corporation, and
KENNETH WEBER, an individual,

      Petitioners,

v.                                                    Case No. 3:09-cv-874-J-34MCR

KENNETH CROSBY NEW YORK, LLC,
a foreign limited liability company,

      Respondent.
_____/

## O R D E R[1]

**THIS CAUSE** is before the Court Respondent's Motion for Abstention (with Supporting Memorandum) and Rule 3.01(g) Certification (Doc. No. 29; Motion), filed on January 5, 2010. Petitioners oppose the relief requested in the Motion, see Petitioners' Reply in Support of Petition and Motion to Compel Arbitration and Response in Opposition to Crosby's Motion for Abstention (Doc. No. 32; Response), and the issues presented are ripe for resolution.

### I. Background

Not content to present just "'another arbitration dispute in which the parties are litigating whether or not they should be litigating[,]'" see Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship., 432 F.3d 1327, 1329 (11th Cir. 2005) (quoting Anders v. Hometown

---

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

Mortgage Servs., 346 F.3d 1024, 1026 (11th Cir. 2003)), the parties in this case are litigating <u>where</u> they should be litigating whether or not they should be litigating.[2]

The story begins when Respondent, Kenneth Crosby New York, LLC (KCNY) sued Petitioners, Johnson & Johnson Vision Care, Inc. and Kenneth Weber (collectively the Johnson & Johnson parties), in state court. The Johnson & Johnson parties removed that case to this Court, where it was assigned to the undersigned. Believing KCNY's claims to be arbitrable, the Johnson & Johnson parties filed a motion to dismiss or stay the case pending arbitration. The Court had no occasion to address that motion, however, because, on KCNY's motion, the Court found the removal to be improper and remanded the case to state court. See Doc. Nos. 1, 7, 16, 18 in <u>Kenneth Crosby LLC v. Johnson & Johnson Vision Care, Inc.</u>, Case No. 3:09-cv-828-MMH-MCR.[3] Still wanting a federal court to determine the arbitrability of the claims at issue, the Johnson & Johnson parties initiated the instant action—which was also assigned to the undersigned—by filing a Petition to Compel Arbitration Pursuant to the Federal Arbitration Act (Doc. No. 1; Petition), and, subsequently, a Motion for Case Dispositive Order Compelling Arbitration and Memorandum in Support of Motion and of Petition to Enforce Arbitration Agreement (Doc. No. 4; Motion to Arbitrate). The Johnson & Johnson parties brought the Petition and Motion to Arbitrate pursuant to the

---

[2]   To be sure, they are also litigating—in two separate fora nonetheless—whether or not they should be litigating. The Court leaves to the parties and their counsel whether this particular game is worth the ever-growing expense of the candle.

[3]   The Court remanded because the jurisdictional hook for removal was diversity of citizenship, but the Johnson & Johnson parties were citizens of the forum state, Florida. See 28 U.S.C. § 1441(b).

Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA).[4]  Specifically, in this action the Johnson & Johnson parties seek an order compelling arbitration of KCNY's claims in the remanded state court action.  They seek this relief under section 4 of the FAA, which allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."  See 9 U.S.C. § 4.[5]

---

[4] "Enacted pursuant to the Commerce Clause, the FAA applies only to a contract 'evidencing a transaction involving [interstate] commerce.'" Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1370 (11th Cir. 2005) (quoting 9 U.S.C. § 2).  The Court finds, and the parties do not argue otherwise, that the commerce requirement is satisfied and the FAA is applicable.

[5] Because section 4 of the FAA does not confer subject matter jurisdiction on federal courts, for an action to compel arbitration to fall within the jurisdiction of the Court there must be some independent basis for jurisdiction over the underlying dispute.  See Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).  In the instant case, jurisdiction is premised on diversity of citizenship.  See 28 U.S.C. § 1332.

The Court's previous determination that the underlying action was not properly removed is impertinent to the Court's determination that it has subject matter jurisdiction over the instant action.  See First Franklin Fin. Corp. v. McCollum, 144 F.3d 1362, 1363 (11th Cir. 1998) (per curiam) ("As a matter of both [28 U.S.C. §] 1332's language and common sense, whether another action is removable or not does not affect jurisdiction in this, an independent action.").  Moreover, the basis of the prior remand order—improper removal of a diversity case by a citizen of the forum state—does not have any preclusive effect on this Court exercising jurisdiction over the instant action.  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 637 F.2d 391, 396, 398 (5th Cir. Unit B Feb. 1981) (Haydu I) (noting that "one issue presented by this appeal is whether a federal court under the facts of this case has the power to entertain an independent action involving the same subject matter and parties as those in a pending state court action that was remanded after an unsuccessful removal to federal court" and explaining that "[i]f district court I had adjudicated the merits of Merrill Lynch's motion to compel arbitration pursuant to the United States Arbitration Act in its remand order, it is clear that Merrill Lynch could not attack that order collaterally by alleging an independent action involving the same parties and claims that were present in the initial action"); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), (adopting as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Additionally, in exercising jurisdiction over this action, the Court has not overlooked the fact that the Johnson & Johnson parties seek to compel arbitration in New Jersey pursuant to an arbitration agreement specifying that arbitration be held in New Jersey.  See Petition at 2-3; Motion to Arbitrate at 3, 20.  It is not entirely clear whether a petition to compel arbitration under section 4 of the FAA is properly brought in this Court.  See e.g. Ansari v. Qwest Commc'ns Corp., 414 F.3d 1214, 1218-20 (10th Cir. 2005) (acknowledging split among circuit courts of appeal and adopting "majority view" that "where

On November 5, 2009, while the Petition and Motion to Arbitrate were in the process of being briefed in this Court, the state court ruled on the motion to stay pending arbitration in the underlying state case. See Order Granting Defendants' Motion to Stay Action Under the Federal Arbitration Act (State Court Order), attached as Exhibit A to Joint Notice of State Court Order (Doc. No. 23).[6] The state court found KCNY's claims in that action to be subject to a valid arbitration agreement between the parties and stayed the case pending arbitration. See id. at 3-4. After seeking additional extensions of time to respond to the Petition and Motion to Arbitrate in this case, see Doc. Nos. 15-22, KCNY appealed the state court decision, and the appeal remains pending before Florida's First District Court of Appeal, see Motion at 2; Response at 8. Following the filing of that appeal, KCNY filed the instant Motion requesting that the Court "abstain from hearing" the Petition and Motion to Arbitrate and defer to state court resolution as to the arbitrability of its claims in the state court action. See generally Motion. The Johnson & Johnson parties argue that abstention is not warranted and request that the Court resolve the Petition and Motion to Arbitrate on the merits. See Response at 5-8.

---

the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4"); but see Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1277-78 (5th Cir. 1975) (holding, as precedent in this Circuit, that, in certain limited circumstances, a district court may properly compel arbitration outside its own district in accordance with the terms of an arbitration agreement). Nevertheless, the Court need not sua sponte raise this issue as it relates not to jurisdiction, but only to venue, which is not challenged here. See Image Software, Inc. v. Reynolds and Reynolds Co., 459 F.3d 1044, 1046-47, 1052-55 (10th Cir. 2006).

[6] As previously mentioned, the motion to stay was filed in this Court before the case was remanded to state court. At the Johnson & Johnson parties' request, the state court allowed them to proceed under that motion rather than file a new motion after the case was remanded. See id. at 2.

## II.     Applicable Law

The parties disagree as to the applicable law with respect to whether this Court should stay the instant action pending resolution of the appeal in the parallel state action. The Johnson & Johnson parties argue that the propriety of a stay is dictated by application of the factors articulated by the Supreme Court in <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), and <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983).  <u>See</u> Response at 6.  KCNY advocates eschewing these factors in favor of a stay under the Court's "'inherent discretionary authority[.]'" <u>See</u> Motion at 3 (quotation omitted).  The Court determines that the <u>Colorado River</u> and <u>Moses H. Cone</u> factors govern.  <u>See</u> <u>Noonan S., Inc. v. County of Volusia</u>, 841 F.2d 380, 381 (11th Cir. 1988) ("[T]he question of whether a federal court may stay or dismiss an action pending the resolution of a parallel state court action is governed by the Supreme Court's decisions in [<u>Colorado River</u> and <u>Moses H. Cone</u>]."); <u>see also</u> <u>Am. Bankers Ins. Co. of Fla. v. First State Ins. Co.</u>, 891 F.2d 882, 884 (11th Cir. 1990) ("This case involves the dismissal of a federal action in deference to a pending state court action; as such it is governed by the principles articulated in [<u>Colorado River</u> and <u>Moses H. Cone</u>].").[7]

---

[7]     Separate and apart from the <u>Colorado River</u> doctrine, which rests on principles of "'wise judicial administration,'" abstention is sometimes appropriate under "traditional abstention doctrines, which involve 'considerations of proper constitutional adjudication and regard for federal-state relations[.]'" <u>Ambrosia Coal & Constr. Co. v. Pages Morales</u>, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting <u>Colo. River</u>, 424 U.S. at 817).  The Supreme Court has

> identified the following circumstances in which the traditional abstention doctrines apply: (a) where cases presenting a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law; (b) where there have been presented difficult questions of state law bearing on policy problems of substantial public import and whose importance transcends the result in the case then at bar; and (c) where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining (1) state criminal proceedings, (2) state nuisance proceedings antecedent to a criminal prosecution, which

In sweeping the Colorado River and Moses H. Cone factors under the rug, KCNY seeks to differentiate between situations where "a federal court is considering whether to dismiss, rather than stay, an action due to parallel state action[,]" arguing that the factors apply only in the former situation. See Motion at 3 (citation omitted). Although one court within this district has apparently endorsed such a distinction, see Craggs Const. Co. v. Federal Ins. Co., No. 6:06-cv-682-Orl-18JGG, 2007 WL 1452938, at *2 (M.D. Fla. May 15, 2007), the undersigned declines to do so, see Moses H. Cone, 460 U.S. at 28 ("[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal."). Indeed, the Eleventh Circuit Court of Appeals has held "that 'a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the Colorado River doctrine.'" Moorer v. Demopolis Waterworks and Sewer Bd., 374 F.3d 994, 998 (11th Cir. 2004) (per curiam) (quotation omitted).

KCNY's plea to the Court's inherent authority is no more persuasive. Tracing KCNY's citation to its roots, this "inherent authority" derives from a statement in the Supreme Court's decision in Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936). Landis, however, arose in the context of a federal district court staying a case in deference to another federal district court, as opposed to a state court. See id. at 251. Indeed, in Colorado River, the Supreme Court specifically distinguished Landis (and cases like it), noting that the "difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to

---

      are directed at obtaining the closure of places exhibiting obscene films, or (3) collection
      of state taxes.
Id. at 1328 n.19 (citing Colo. River, 424 U.S. at 814-16). There is no contention that any of these traditional abstention considerations are present in the instant case. See id.

exercise the jurisdiction given them." Colo. River, 424 U.S. at 817 (citations omitted); see Gov't. of the Virgin Islands v. Neadle, 861 F. Supp. 1054, 1056 (M.D. Fla. 1994) (contrasting Moses H. Cone and Landis, noting that where an action is pending simultaneously in federal and state court, the "federal court's 'abiding duty' to exercise jurisdiction conferred upon it requires that it exercise that jurisdiction unless there are compelling reasons not to[,]" whereas when "two federal courts with concurrent jurisdiction are involved, . . the movant need not demonstrate compelling need for a stay" but "merely that the stay is appropriate"); see also Ambrosia Coal & Constr. Co. v. Pages Morales, 368 F.3d 1320, 1328-29 (11th Cir. 2004).

Accordingly, the Court determines that the propriety of a stay in this case is governed by the Colorado River and Moses H. Cone factors.[8] As explained by the Eleventh Circuit

---

[8] The Court's decision to apply the Colorado River and Moses H. Cone factors is consistent with post-Moses H. Cone Eleventh Circuit precedent involving similar legal questions. See TranSouth Fin. Corp. v. Bell, 149 F.3d 1292, 1294-96 (11th Cir. 1998); McCollum, 144 F.3d at 1364-65.

There are twin pink elephants in the room, however, both named Haydu. In Haydu I, the former Fifth Circuit—in a scenario distinguishable yet quite similar legally and factually to the instant case—commented that "[g]iven the concurrent jurisdiction of the state and federal courts that existed in this instance and especially in view of the prior remand, a stay of Merrill Lynch's independent action [to compel arbitration] by [the] district court . . . would have been appropriate." Haydu I, 637 F.2d at 395 n.5, 397. In support of this conclusion, the Haydu I court cited Ballantine Books, Inc. v. Capital Distrib. Co., 302 F.2d 17 (2d Cir. 1962), a Second Circuit case pre-dating Colorado River. See Haydu I, 637 F.2d at 395 n.5, 397. A year after Haydu I the case was back on appeal, this time before a panel of the newly minted Eleventh Circuit. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169 (11th Cir. 1982) (Haydu II), overruled on other grounds as recognized in Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437, 1440 n.3 (11th Cir. 1986) (per curiam). The Haydu II panel picked up where the Haydu I panel left off, this time on a more developed record: "Comity concerns, strong then, now overwhelmingly compel us to allow this cause to proceed to completion in state court." See Haydu II, 675 F.2d at 1172. After a discussion of federalism concerns and traditional abstention doctrines, see id. at 1173-74, the Haydu II court also emphasized that policies of "practicality" and avoiding duplicitous litigation supported "relinquishment of [federal] jurisdiction[,]" see id. at 1174. In so doing, the court, without citation, explained that "[i]t should make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction. There are no reasons compelling the federal court, last into this case, which remanded after removal proceedings, to decide the case." See id.

Haydu I and Haydu II (collectively "the Haydu cases") present a dilemma of precedent. "Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's

Court of Appeals:

> In Colorado River the Supreme Court announced that a federal court may dismiss an action because of parallel state court litigation only under "exceptional" circumstances. Indeed, "[o]nly the clearest of justifications will warrant dismissal." The Court set out four factors to be considered in determining whether dismissal on the grounds of exceptional circumstances is appropriate: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; and (4) the order in which the forums obtained jurisdiction. In Moses H. Cone, the Court reaffirmed its view that only

---

holding is overruled by the Court sitting en banc or by the Supreme Court." Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) (citation omitted). The Haydu cases were decided after Colorado River but before Moses H. Cone. They are on point because they involve the precise legal question here presented—the propriety of abstention in deference to a parallel state court proceeding in the specific context of a federal action brought as a petition to compel arbitration under the FAA. See Haydu II, 675 F.2d at 1171-74 (citing Haydu I, 637 F.2d at 394-95, 397). Neither of the Haydu cases cite Colorado River, and neither is cited by the more recent Eleventh Circuit authority in TranSouth and McCollum. The Court discerns some tension between the Haydu cases and the analysis prescribed by Colorado River. Cf. Pigott v. Sanibel Dev., LLC, 508 F. Supp. 2d 1028, 1034 (S.D. Ala. 2007).

    Nevertheless, even if the Court were to assume that the Haydu cases overlooked, and were inconsistent with, Colorado River, that alone would not undermine their precedential weight. See Smith, 236 F.3d at 1303 ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time."). That is where Moses H. Cone, which was decided after the Haydu cases, enters the picture. See Smith, 236 F.3d at 1303 n.11 ("Our use of the limiting phrase 'as it relates to the law in existence at that time' [to define the scope of the prior panel precedent rule] is deliberate. Subsequent panels are not bound by prior decisions where there has been a change in the controlling law as a result of a subsequent en banc or Supreme Court decision or statutory change.")

    As previously indicated, Moses H. Cone altered the Colorado River framework, adding additional factors to the analysis. See Am. Bankers Ins. Co., 891 F.2d at 884 ("In Moses H. Cone, the Court reaffirmed its view that only exceptional circumstances will warrant dismissal of federal cases in favor of a concurrent state suit. The Moses H. Cone decision also repeated the four Colorado River factors and added two more[.]") (internal citation omitted); see also TranSouth, 149 F.3d at 1294 ("As modified by the Supreme Court in [Moses H. Cone] the Colorado River doctrine requires federal courts to consider six factors in determining whether abstention in favor of a concurrent state proceeding is appropriate . . . ."). More importantly, Moses H. Cone explicitly applied this modified Colorado River framework to the very context presented here—analyzing the propriety of a federal district court abstaining from resolution of a petition to compel arbitration under the FAA in deference to a parallel state court proceeding. See Moses H. Cone, 460 U.S. at 930-31, 935. Thus, in light of the Supreme Court's intervening decision in Moses H. Cone, the Court determines that it must apply the modified Colorado River framework for considering whether concerns of practicality and duplicity justify a stay. See id. This unremarkable approach, as previously mentioned, is consistent with Eleventh Circuit precedent post-Moses H. Cone. See TranSouth, 149 F.3d at 1294-96; McCollum, 144 F.3d at 1364-65.

    Of course, by concluding that the Haydu cases' framework is not binding on this Court, the Court does not imply that their analyses are impertinent. Quite to the contrary, the Haydu cases appear instructive in many regards. The Court merely holds that whatever analytical value the Haydu cases provide must be to adapted to the Colorado River and Moses H. Cone framework.

> exceptional circumstances will warrant dismissal of federal cases in favor of a concurrent state suit. The Moses H. Cone decision also repeated the four Colorado River factors and added two more: (5) whether state or federal law will be applied; and (6) the adequacy of the state court to protect the parties' rights.

Am. Bankers Ins. Co., 891 F.2d at 884 (internal citations omitted) (alteration in Am. Bankers Ins. Co.). The Court must carefully balance these six factors to determine whether "exceptional circumstances" justifying a stay exist. See id. "The weight to be given any one factor may vary greatly depending on the case; however, the balance is 'heavily weighted' in favor of the federal court exercising jurisdiction." Id. (citing Moses H. Cone, 460 U.S. at 16).

### III. Analysis[9]

The first two Colorado River and Moses H. Cone factors appear to be neutral—no court has assumed jurisdiction over any property, and there is no suggestion that the federal forum is inconvenient. See Moses H. Cone, 460 U.S. at 18 ("[T]he first two factors mentioned in Colorado River are not present here. There was no assumption by either court of jurisdiction over any res or property, nor is there any contention that the federal forum was any less convenient to the parties than the state forum."); see also McCollum, 144 F.3d at 1364. The law of decision, however, weighs against abstention, because the interpretation of the FAA will be under federal law. See TranSouth, 149 F.3d at 1295-96; McCollum, 144 F.3d at 1365. Similarly, the lack of potential for piecemeal litigation does not weigh in favor

---

[9] As an unfortunate consequence of the parties' disagreement regarding the law applicable to the instant Motion, neither party has properly briefed the six factors that guide this Court's analysis regarding the propriety of a stay. KCNY erroneously contends that the factors are inapplicable, see Motion at 3, and the Johnson & Johnson parties treat this approach as an implied concession that the six factors counsel against a stay, see Response at 7.

of a stay. See McCollum, 144 F.3d at 1364 ("[H]ere as in Moses H. Cone the [potential for piecemeal litigation] factor has 'no force.' The federal proceeding has only two possible outcomes: an order compelling arbitration, or an order refusing to compel arbitration and dismissing the petition. No piecemeal litigation of the merits can occur either way, and even if arbitration results, that is piecemeal litigation that the parties and federal policy have together made mandatory.") (internal citations omitted); see also TranSouth, 149 F.3d at 1295-96. However, because Florida courts have accepted that they may compel arbitration under section 4 of the FAA, see e.g., Fahnestock v. Dean Witter Reynolds, Inc., 691 So. 2d 509, 509 (Fla. 4th DCA 1997); Manning v. Interfuture Trading, Inc., 578 So. 2d 842, 842-44 (Fla. 4th DCA 1991), the adequacy of state remedies weighs in favor of abstention, see TranSouth, 149 F.3d at 1295-96; McCollum, 144 F.3d at 1365.[10]

Despite this conclusion, the Court discerns one specific factor meriting discussion with respect to the adequacy of state court remedies. In federal court, although an order refusing a stay under section 3 of the FAA or denying a petition to compel arbitration under section 4 is appealable, an interlocutory order granting a stay or petition under sections 3 or 4 is not immediately appealable. See 9 U.S.C. § 16. As the procedural posture of this case makes clear, however, the same apparently is not true with respect to Florida state courts applying the FAA—in a Florida court, a party may immediately appeal a non-final order ruling in favor of, or against, arbitrability. See Fla. R. App. P. 9.130(a)(3)(C)(iv)

---

[10] The FAA "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." Moses H. Cone, at 460 U.S. at 22. Although it is not entirely clear, it appears to the Court that the state court did not compel arbitration pursuant to section 4 of the FAA, but merely ordered a stay pursuant to section 3. See State Court Order at 4. Regardless, either relief is available.

("Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . the entitlement of a party to arbitration[.]"); see also Kaplan v. Divosta Homes, L.P., 983 So. 2d 1208, 1209-1210 (Fla. 2d DCA 2008) (reviewing cross appeals of trial court order under the FAA compelling arbitration of some claims and declining to compel arbitration of other claims); Lopez v. Ernie Haire Ford, Inc., 974 So. 2d 517, 518 & n.1 (Fla. 2d DCA 2008) (per curiam) (reviewing non-final order compelling arbitration under the FAA); Gainesville Health Care Ctr., Inc. v. Weston, 857 So. 2d 278, 280-82 (Fla. 1st DCA 2003) (reviewing non-final order denying motion to compel arbitration).

It is well established that both sections 3 and 4 of the FAA evince a "policy of rapid and unobstructed enforcement of arbitration agreements." See Moses H. Cone, 460 U.S. at 22-23. Indeed, the very purpose of the dichotomy drawn by the 1988 enactment of what was renumbered in 1990 to be FAA section 16—"to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration"—is a federal policy in favor of swift arbitration. See Filanto, S.p.A. v. Chilewich Int'l Corp., 984 F.2d 58, 60 & n.1 (2d Cir. 1993); McDermott Int'l, Inc. v. Underwriters at Lloyds Subscribing to Memorandum of Ins. No. 104207, 981 F.2d 744, 746-47 (5th Cir. 1993). By seeking to prevent "'parties from frustrating arbitration through lengthy preliminary appeals,'" it is evident that "[s]ection 16 'is a pro-arbitration statute designed to prevent the appellate aspect of the litigation process from impeding the expeditious disposition of an arbitration[.]'" See Augustea Impb Et Salvataggi v. Mitsubishi Corp., 126 F.3d 95, 98-99 (2d Cir. 1997) (quotations omitted). Given this policy, the fact that Florida courts allow an immediate appeal of a non-final order compelling arbitration appears on its face to potentially undermine the adequacy of remedies

available to the Johnson & Johnson parties in state court. See McCollum, 144 F.3d at 1365 (noting that "state court remedies may be adequate here" but acknowledging that "there are counterconsiderations[,]" chief among which is that "the state court has apparently not ruled on 1st Franklin's motion, effectively undermining the federal policy embodied in the FAA in favor of swift enforcement of arbitration agreements").

Nevertheless, the Court concludes in this case that the availability of immediate appellate review in Florida does not undermine the adequacy of the state court remedies. First, as the Court acknowledged in Moses H. Cone (a case pre-dating the enactment of FAA section 16), "[i]n many cases, no doubt, a § 3 stay is quite adequate to protect the right to arbitration." See Moses H. Cone, 460 U.S. at 27. In that case, a simple stay was inadequate because "the party opposing arbitration is the one from whom payment or performance is sought," and thus a simple stay would have left "the recalcitrant party free to sit and do nothing—neither to litigate nor to arbitrate." See id. In the instant case, the party opposing arbitration, KCNY, is the plaintiff (the party seeking payment or performance), in the underlying dispute. Thus, a stay of the underlying litigation—accomplished pending appellate review—appears "quite adequate to protect the right to arbitration" in this case. See id.

Perhaps more importantly, given the posture of this case, were this Court to decide the issue on the merits, it would be able to afford the Johnson & Johnson parties no greater relief. Although section 16 generally promotes appeals from orders barring arbitration and limits appeals from orders directing arbitration, that policy is not absolute. See McDermott, 981 F.2d at 746-47. Specifically, the pro-arbitration policy is qualified because "'appeals

may still be taken from final judgments concerning arbitration or pursuant to a 28 U.S.C. § 1292(b) certificate.'" Id. at 747 (quotation omitted); 19 U.S.C. § 16(a)(3) ("An appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title."); see also Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 85-86 (2000) (recognizing that section 16(a)(3) explicitly "preserves immediate appeal of any 'final decision with respect to an arbitration,' regardless of whether the decision is favorable or hostile to arbitration"). "A decision is final within the meaning of §16(a)(3) where the court 'dispose[s] of the entire case on the merits and l[eaves] no part of it pending before the court.'" Jackson v. Cintas Corp., 425 F.3d 1313, 1316 (11th Cir. 2005) (per curiam) (quoting Green Tree, 531 U.S. at 86) (alterations in Jackson). In the instant case, brought simply as a petition to compel arbitration under section 4, the entire merits of the case concern the issue of arbitrability. The underlying dispute is not before the Court. Assuming arguendo the Court were to proceed to the merits and rule on the issue of arbitrability, it seems imminently likely that such an order would be "final" and immediately appealable under section 16(a)(3).[11] Thus,

---

[11] In so recognizing, the Court does not purport to rely on the discredited distinction between "embedded" and "independent" proceedings. See Green Tree, 531 U.S. at 87-88. The Court merely notes that because the sole issue before it concerns arbitrability, the likelihood that a resulting order will be final and immediately appealable is inescapable. See Great Earth Cos., Inc. v. Simons, 288 F.3d 878, 885 (6th Cir. 2002) ("In the instant case, arbitrability of the dispute was the sole issue before the district court. The order below, therefore, 'plainly disposed of the entire case on the merits and left no part of it pending before the court.' The fact that a separate but related state-court action remains pending does not alter the fact that '[t]he decision to compel arbitration settled everything that was before the district court in this case.'" (internal quotations omitted) (alteration in Simons); see also Randolph v. Green Tree Fin. Corp.-Ala.,178 F.3d 1149, 1153-57 (11th Cir. 1999) aff'd in relevant part, rev'd on other grounds, 531 U.S. at 84 (rejecting rigid adherence to distinction between "independent" and "embedded" claims in favor of more traditional definition of "final decision" later approved by Supreme Court on appeal, but noting that "[i]n most arbitration appeals there will be little difference between the traditional definition of 'final decision' and one that relies on the distinction between embedded and independent proceedings"); cf. Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc., 312 F.3d 1349, 1354-55 (11th Cir. 2002) (per curiam) (noting that in order compelling arbitration the district court "ruled on all the relief requested . . . in [the] complaint and 'closed' the case[,]" which "[i]n most cases, . . . would lead us to conclude that the order was final" but nevertheless holding that the order was

it does not appear, under the specific circumstances before the Court, that the availability of an immediate appeal under state law undermines the adequacy of the state law remedies.

Notwithstanding that some factors weigh against abstention and that "'the balance [is] heavily weighted in favor of the exercise of jurisdiction[,]'" the Court recognizes that the abstention decision "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case,'" and that "[t]he weight of each factor varies on a case-by-case basis, depending on the particularities of that case." See Moorer, 374 F.3d at 997 (quoting Moses H. Cone, 460 U.S. at 16). Indeed, "[o]ne factor alone can be the sole motivating reason for the abstention." Id. (citing Moses H. Cone, 460 U.S. at 16). In this case, that one factor is the sole factor not yet discussed—the priority in which the forums obtained jurisdiction. As explained below, the Court finds that this factor overwhelmingly weighs in favor of a stay under the facts presented here.

The priority factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21; see also TranSouth, 149 F.3d at 1295 ("[T]his factor requires the court to consider not only the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier.") (citation omitted). Although it is true that the Johnson & Johnson parties could not have availed themselves

---

not final and not immediately appealable because "part of the relief requested (and granted) was for the district court to retain jurisdiction to confirm the arbitration award and to award attorneys' fees associated with the litigation and the arbitration").

-14-

of a federal forum much sooner (indeed, their attempt to remove the state court action was rebuked), the progress of the proceedings reveals that the state action is "running well ahead" of this action. See Moses H. Cone, 460 U.S. at 22. In the instant scenario, as the parties anticipated during their first appearance before the Court on October 5, 2009, see Doc. No. 12, the state trial court has already decided the issue of arbitrability. That determination is on appeal before a Florida appellate court. In contrast, this Court has not begun to address the merits of arbitrability. Indeed, because of the parties' agreed extensions of time for KCNY to respond to the Petition and Motion to Arbitrate and for the Johnson & Johnson parties to reply to that response—agreed extensions that were in part due to the parties waiting for the state court to rule on the issue of arbitrability—the Motion to Arbitrate only became ripe on January 26, 2010. See Doc. Nos. 15-24, 28, 30-32.

In this regard, the present scenario is critically distinguishable from Moses H. Cone, TranSouth, and McCollum. See Moses H. Cone, 460 U.S. at 22 ("Here, . . . [i]t was the state-court suit in which no substantial proceedings. . . had taken place at the time of the decision to stay. In the federal suit, by contrast, the parties had taken most of the steps necessary to a resolution of the arbitrability issue."); TranSouth 149 F.3d at 1295-96 (finding error where "the district court decided to abstain from exercising its jurisdiction, even though the state court had not issued a ruling on the arbitrability issue"); McCollum 144 F.3d at 1365 ("[N]o activity had occurred in state court before the filing of the federal petition or even before the district court ruled.").[12] Indeed, the present case is factually much more similar

---

[12] The Court notes that KCNY did not immediately request abstention. Only after the state trial court ruled on the issue of arbitrability (adversely to KCNY, the Court might add), did KCNY move this Court for a stay.

-15-

to Haydu. There, as in this case, the state court entered an order prior to the federal district court's resolution of arbitrability. See Haydu II, 675 F.2d at 1171.[13] Because the state court had denied the motion to compel arbitration and the case had progressed to the brink of trial, the Eleventh Circuit held that "in view of the current advanced posture of this case [in the state court]" principles of "common sense and comity" dictated a yield of federal jurisdiction to the state courts. See id. at 1173-74;[14] cf. United Benefit Life Ins. Co. v. Collins, No. CV-00-PT-3155-M, 2001 WL 273902, at *3 (Jan. 2, 2001) (contrasting McCollum with Haydu II, and finding abstention to be unwarranted because "there is no indication in the record that the state court case has progressed to such a point that this court's decision would violate the principle of comity and create federalism concerns"). Given that the state trial court has already answered the question of arbitrability and that briefing of that determination is underway before a state court of appeals, the advanced progression of state court proceedings on the only issue before this Court compels this Court to abstain from entering the fray. See Haydu II, 675 F.2d at 1173-74; cf. Moses H. Cone, 460 U.S. at 21; see also Pompey v. Broward County, 95 F.3d 1543, 1550 (11th Cir. 1996) ("Neither federal district courts nor federal courts of appeals may usurp the authority and function of the Supreme

---

[13] The Court recognizes that the Haydu cases are distinguishable in that in Haydu, unlike in this case, the state court order addressing arbitrability was not pursued on appeal. See id. at 1173.

[14] As the Court previously indicated, the analysis in Haydu II may not be entirely consistent with the Supreme Court's pronouncement in Moses H. Cone. Nevertheless, the concerns of practicality and deference to the advanced posture in the state court litigation, coupled with the fact that the state court ruled on the issue of arbitrability before the matter was ripe for resolution by the federal court, are consistent with the discussion in Moses H. Cone regarding the order-of-obtaining-jurisdiction factor. See Moses H. Cone, 460 U.S. at 21.

Court and state appellate courts to review state court proceedings. The state courts are courts of equal dignity with all of the federal 'inferior courts[.]'").[15]

**IV. Conclusion**

The only issue in this case concerns the arbitrability of certain claims made by KCNY against the Johnson & Johnson parties in a parallel state court action. In accordance with its "concurrent jurisdiction to enforce the FAA[,]" see Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997), the state court beat this Court to the punch in answering the question of arbitrability, and an appeal of that determination is underway. Given the comparatively slight progression in this case, the Court finds that "exceptional circumstances" justify staying this case in deference to the advanced parallel state litigation. See Moorer, 374 F.3d at 997. Accordingly, the Court will grant KCNY's Motion.

Accordingly, it is hereby **ORDERED**:

1. Respondent's Motion for Abstention (with Supporting Memorandum) and Rule 3.01(g) Certification (Doc. No. 29) is **GRANTED**.

2. This action is **STAYED** pending the resolution of the concurrent state court proceeding.

---

[15] The Court's citation to Pompey for the unremarkable proposition that it is not the province of this Court to sit as a state appellate court should not be construed as an invocation of the Younger abstention principles on which Pompey was decided. See TranSouth,149 F.3d at 1296 n.1 (holding that in the context of a petition to compel arbitration under the FAA, Younger abstention is inappropriate because "no compelling state interest exists in having the state courts, instead of the federal courts, decide th[e] case").

3. Ninety days from the date of this Order, and every ninety days thereafter, the Parties shall file a joint status report with this Court to advise the Court of the status of the state court proceeding.[16]

4. The Clerk of the Court is directed to terminate all pending motions and administratively close this case pending further Order of the Court.

**DONE AND ORDERED** in Jacksonville, Florida, this 17th day of March, 2010.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc9

Copies to:

Counsel of Record

---

[16] Should circumstances in the state court action change, the Court will entertain a motion by either party to lift the stay and proceed to the merits of this action.